**has IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EMERIO TALAVERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 14 CV 4013 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JULIUS FLAGG, Warden, | ) | |
| Centralia Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se Petitioner Emerio Talavera currently is incarcerated at Centralia Correctional Center in Illinois. Julius Flagg, the warden of the facility, has custody of Petitioner. Pending before the Court are Petitioner Talavera's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [8] and motion for an evidentiary hearing [21]. For the reasons set forth below, the Court respectfully denies the petition [8] and the motion [21].

**I.      Background**

**A.      Underlying Criminal Proceedings**

In 2000, a Kane County jury found Petitioner Emerio Talavera guilty of the murder of Hector Munoz in the first degree. See [8], Pet. at 1–2. Petitioner was sentenced to 40 years' imprisonment and currently is serving his sentence at the Centralia Correctional Center in Centralia, Illinois. *Id.* at 1.

Petitioner and Munoz, the victim, were both members of the Latin Kings gang in Elgin, Illinois when Munoz was killed. [26], Ex. A at 1.[1] Petitioner was the "enforcer" of the Elgin

---

[1] Exhibit A is *People v. Talavera*, No. 2-00-0560 (Ill. App. Ct. Jan. 15, 2002), the Illinois Appellate Court's opinion affirming Petitioner's conviction on direct appeal. State court factual findings are presumed correct and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

Latin Kings, and there was testimony at trial that the enforcer was responsible for discipline within the gang when gang rules were broken. *Id.* at 2. At trial Petitioner contended that he accidentally shot Munoz while riding in a car. Specifically, on May 28, 1998, Petitioner was riding in Munoz's car with Munoz and another gang member, heading to the home of Christian Garza, another Latin Kings member. See *id.* at 2–3. Other gang members were in a second car, which was behind the car in which Petitioner and Munoz rode. *Id.* at 3. Petitioner testified that he felt "bubbly" from drinking beer and smoking marijuana earlier in the evening and that he was beginning to fall asleep in the back seat of the car. *Id.* Petitioner further testified that when he realized that fellow gang members were in the car behind him, he decided to show off the gun that he had with him. See *id.* at 3–4. As Petitioner pushed himself up from the seat in which he was slouched, preparing to hold up the gun so that the people in the car behind him could see it, he "yanked on the gun" and "it went off," shooting Munoz in the head and killing him. See *id.* at 4.

The State's theory at trial was that Petitioner had intentionally killed Munoz, because Munoz had "tricked" by giving testimony at two non-related criminal trials that identified others as Latin Kings members. [26], Ex. A at 6. In support, a fellow gang member testified that they were instructed not to spend time with Munoz, *id.* at 5, and that after the shooting, Petitioner stated, "We shot Hector [Munoz] * * * We shot the trick," *id.* at 4. Another gang member testified that Petitioner stated "I shot the trick," after the shooting. *Id.*

The trial court overruled Petitioner's motion in limine to exclude evidence of Munoz's testimony in the prior trials that supposedly made him a "trick" from the gang's perspective. Petitioner argued that any such evidence was inadmissible hearsay, that Munoz's testimony was

---

*Carter v. Thompson*, 690 F.3d 837, 839 (7th Cir. 2012), cert. denied, 133 S. Ct. 887 (2013).

irrelevant because it could not be fairly characterized as "tricking," and that there was no evidence that Petitioner even was aware of the substance of Munoz's testimony. See [26], Ex. A at 7. The trial court disagreed and allowed the State to put on three attorney witnesses who were involved in the prior trials. The trial court allowed the attorney witnesses to summarize the testimony that Munoz gave at the prior trials to confirm that Munoz's testimony involved the identities and activities of Latin Kings; the transcripts from the trials were not admitted, however. See *id.* at 7–8. Petitioner admitted that he knew of one of the trials involving Munoz, but denied that anything about it made him want to harm Munoz. *Id.* at 9.

In his closing argument at trial, Petitioner's counsel asked for an acquittal based on the contention that the shooting "had been the accidental act of a '16-year-old boy.'" [26], Ex. C at ¶ 14. Defense counsel offered no argument suggesting that the jury should find Petitioner guilty only of the lesser-included offense of involuntary manslaughter. See *id.* The jury was instructed, however, on involuntary manslaughter, but nonetheless returned a guilty verdict on first degree murder. See *id.* The trial court sentenced Petitioner to 40 years' imprisonment. *Id.* at ¶ 15.

### B. Direct Appeal

Petitioner appealed his conviction and raised two issues: (1) whether there was sufficient evidence to support a finding of guilt beyond a reasonable doubt, and (2) whether it was reversible error to allow evidence of Munoz's testimony from the prior trials as evidence of Petitioner's purported motive for the murder. See [8], Pet. at 2; [26], Ex. A at 1. The Illinois Appellate Court rejected these claims and affirmed the conviction in the unpublished opinion *People v. Talavera*, No. 2-00-0560 (Ill. App. Ct. Jan. 15, 2000). With respect to the first issue— the sufficiency of the evidence—the Appellate Court found that the circumstances surrounding

the shooting provided enough evidence to support a conviction, even without certain testimony that Petitioner argued was unreliable. See [26], Ex. A at 9–12.

As to the second issue, Petitioner argued that it was error to allow the three attorney witnesses to summarize Munoz's testimony from the prior trials, because the State did not sufficiently establish that Petitioner was aware of Munoz's testimony at the time of the shooting. See [26], Ex. A at 12. The Appellate Court disagreed, concluding that there was sufficient evidence that Petitioner regarded Munoz as a "trick." In so holding, the Appellate Court cited testimony from witnesses who stated that Petitioner called Munoz a "trick" after the shooting, as well as the fact that Petitioner was a member of a gang that believed that Munoz had "tricked." See *id.* at 16.

Petitioner next filed an unsuccessful petition for leave to appeal (or "PLA") to the Illinois Supreme Court, in which he argued that his rights were violated when the State was allowed to offer its motive evidence through the attorney witnesses. See [26], Ex. F at 1. In particular, Petitioner argued that (1) the trial court should have admitted the transcripts from the prior trials at which Munoz testified (instead of allowing the jury to hear subjective, third-party interpretations by the attorney witnesses), and (2) there was no evidence that Petitioner had knowledge of Munoz's testimony from the other trials—*i.e.*, there was no nexus between Munoz's testimony and Petitioner's purported motive. See *id.* at 14, 17. Petitioner did not challenge the evidence on hearsay or Confrontation Clause grounds, however. Petitioner's PLA brief—although raising the issue of hearsay—specifically states that Petitioner "accepts * * * for purposes of the[ ] PLA proceedings," the trial court's ruling that "the testimony about the[ ] unrelated trial proceedings was not being offered for the truth of the matter asserted," thereby avoiding Confrontation Clause issues. *Id.* at 13.

### C.     Post-Conviction Review

Relevant here is Petitioner's second amended post-conviction petition, which was dismissed by the Circuit Court of Kane County at the second stage of the State's post-conviction process.  The dismissal was affirmed on appeal in *People v. Talavera*, 2-12-0232 (Ill. App. Ct. Mar. 8, 2013).  Petitioner raised four issues in his second amended post-conviction petition.  He first argued that his trial counsel was constitutionally ineffective by urging the jury for a complete acquittal instead of suggesting that a compromise verdict of involuntary manslaughter was appropriate.  [26], Ex. C at 12.  Petitioner also argued that his trial counsel was ineffective by eliciting harmful testimony from witnesses during trial.  See *id.* at 18.  Third, Petitioner argued that his trial counsel was ineffective by failing to request a limiting instruction on the testimony offered by the attorney witnesses.  In particular, Petitioner asserted that a limiting instruction was needed to prevent the jury from substantively considering the testimony and drawing conclusions from Petitioner's association with gang members who committed violent or criminal acts unrelated to the offense for which Petitioner was tried.  See *id.* at 24.  Petitioner relatedly argued that the absence of a limiting instruction resulted in a violation of Petitioner's rights under the Confrontation Clause pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). *Id.*  Finally, Petitioner argued that his appellate counsel was ineffective by failing to raise each of the foregoing claims on direct appeal.   See *id.* at 7.

The Illinois Appellate Court rejected these claims on the merits and on procedural default grounds.  With respect to Petitioner's first claim concerning his counsel's closing argument, the Court found that defense counsel's "accidental shooting" theory was legally viable and that nothing in the closing argument foreclosed a guilty verdict only on the lesser-included offense of involuntary manslaughter.  See [26], Ex. C at 12–17.  The Appellate Court found Petitioner's

argument about eliciting harmful testimony to be without merit for various reasons. See *id.* at 18–24. Finally, the Court concluded that there was no merit to Petitioner's claim that his counsel was ineffective by failing to request a limiting instruction on the motive evidence offered by the State. For one, the evidence did not implicate *Crawford* or the Confrontation Clause, because the testimony in question was not hearsay. See *id.* at 24–25. In addition, a limiting instruction was not necessary, as the attorneys' testimony did not implicate Petitioner; and even if it did, defense counsel made a strategic decision not to request a limiting instruction that could have drawn more attention to the State's motive evidence. See *id.* at 26–27. The Appellate Court also found that the claims were procedurally defaulted to the extent that they relied on facts that appeared on the face of the original trial record; the Court declined to relax the procedural default standard, as Petitioner's appellate counsel was not ineffective by failing to raise the (non-meritorious) ineffective assistance of trial counsel claims on direct appeal. See *id.* at 27–28.

Petitioner then filed a pro se PLA to the Illinois Supreme Court, in which he argued that his rights were violated when his trial counsel failed to ask for the comprise verdict of involuntary manslaughter. [26], Ex. N at 1. Petitioner contended that he was entitled to proceed to the third stage in the Illinois post-conviction process, which allows an evidentiary hearing. See *id.* The PLA also made reference to trial counsel's failure to request a limiting instruction or to provide the State with counter-offers during the pre-trial plea-bargaining. See *id.* at 18. The Illinois Supreme Court denied leave to appeal on September 25, 2013. See [26], Ex. O.

### D. Federal Habeas Petition

After exhausting his state court remedies,[2] Petitioner filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court. The petition [8] raises three claims:

---

[2] As the State points out in its answer, see [25] at 10, Petitioner exhausted his state court remedies by proceeding through a direct appeal and one full round of post-conviction proceedings in Illinois. See *Johnson v. Hulett*, 574 F.3d 428, 431 n.2 (7th Cir. 2009).

(1)      Petitioner's rights under the Confrontation Clause were violated when the trial court allowed attorney witnesses to testify about the information that Munoz gave in prior trials;

(2)      Petitioner's trial counsel was constitutionally ineffective by failing to pursue an involuntary manslaughter plea or conviction during pre-trial plea-bargaining and during closing argument at trial; and

(3)      failing to provide or request a limiting instruction on the testimony offered by the attorney witnesses violated Petitioner's due process right to effective counsel and his rights under the Confrontation Clause.

See [8], Pet. at 8–12.

On December 24, 2014, Petitioner filed a motion to expand the record [28], which the Court granted without objection from the State, see [31]. In particular, the State explained that the excerpts that Petitioner cited in his motion—namely, excerpts from the trial transcript, the sentencing transcript, and the prior trials at which Munoz testified—already were included in the exhibits that the State filed with its answer to Petitioner's habeas petition. See [30] (citing Exhibits 21, 25, 26, 29). Petitioner also requested an evidentiary hearing [21] on his second and third habeas claims. The State addressed the merits of that motion in its answer [25] to Petitioner's habeas petition.

## II.    Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable applicable of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting § 2254(d)). In *Williams v. Taylor*, the Supreme Court explained that a state court's decision is "contrary to" clearly

established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." See 529 U.S. 362, 405 (2000); see also *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts."). Under the "unreasonable application" prong, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. See *Williams*, 529 U.S. at 407; see also *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013). "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison*, 689 F.3d 832, 835 (7th Cir. 2012); see also *Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager*, 715 F.3d at 1016 (citation omitted).

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotations marks omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). To fairly present

a claim, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and also must alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. See *Mulero*, 668 F.3d at 536.

A habeas petitioner may overcome procedural default by (1) demonstrating cause for the default and actual prejudice, or (2) by showing that the Court's failure to consider the claim would result in a miscarriage of justice. See *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense," which prevents a petitioner from pursuing his constitutional claim in state court. See *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

### III.     Analysis

#### A.     The Testimony from the Attorney Witnesses Regarding Munoz's Prior Testimony

The Court first turns to Petitioner's claim that the testimony from the attorney witnesses who summarized Munoz's testimony from prior trials was hearsay and violated Petitioner's

Confrontation Clause rights under the Sixth Amendment. As explained below, the Court must reject this claim because it is procedurally defaulted, and Petitioner has not demonstrated that the default should be excused.

As noted, "[b]efore seeking habeas relief, a petitioner must fairly present his federal claims at each level of the state's courts for their review." *Woods*, 589 F.3d at 373 (citing 28 U.S.C. § 2254(b)(1)(A)). As such, "when a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Id.* In Illinois, a petitioner "must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). Petitioner avers that he raised this claim on direct appeal and in his post-conviction proceedings, see [8], Pet. at 8, but his briefs and the relevant Appellate Court decisions indicate otherwise.

As Petitioner points out in his reply brief in support of his habeas petition, the second issue that Petitioner raised on direct appeal did concern the admissibility of the testimony given by the attorney witnesses—namely, whether it was error to admit the testimony "because there was no evidence that the accused knew the facts that the jury heard." [27], Pet.'s Reply at 2 (quoting direct appeal brief).[3] It does not appear, however, that Petitioner argued that the testimony was hearsay or posed a Confrontation Clause issue. See [26], Ex. D at 4. The Appellate Court's written opinion also is limited to the "issue presented" in Petitioner's brief, further indicating that Petitioner did not raise the Confrontation Clause claim on direct appeal. See [26], Ex. A at 12–16. In addition, Petitioner specified that he was *not* raising a

---

[3] The State has provided the surviving excerpts from Petitioner's direct appeal brief, [26], Ex. D, which include the first page of the brief that states the issues presented for appellate review.

Confrontation Clause claim in his PLA to the Illinois Supreme Court. In particular, the PLA brief states:

> [T]he State fought long and hard to introduce testimony from two prior, unrelated trials [as motive]. Petitioner was not a party to either trial so both hearsay and constitutional confrontation clause issues are involved. The trial court avoided these problems by holding that the testimony about these unrelated trial proceedings *was not being offered for the truth of the matter asserted. Petitioner accepts that ruling for purposes of these proceedings*[.]

[26], Ex. F at 14 (emphasis added). Finally, Petitioner failed to raise this particular Confrontation Clause claim in his post-conviction proceedings in Illinois. See [26], Exs. C & K.

Petitioner's failure to give the Illinois courts "a *fair* opportunity to act on [his] [Confrontation Clause] claim[]," by omitting this claim from his state court filings means that the claim is procedurally defaulted. See *Boerckel*, 526 U.S. at 844, 848; *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) ("To obtain federal habeas review, a state prisoner must first submit his claims through one full round of state-court review * * * [by] fairly present[ing] the substance of [the] claims to the state courts by articulating both the operative facts and applicable law that * * * entitles [one] to relief.").

Petitioner may excuse his default by showing that (1) there is cause and prejudice for the default, or (2) the absence of federal habeas review would result in a miscarriage of justice. See *House*, 547 U.S. at 536. Petitioner does not contend that the default should be excused, nor does there appear to be any ground upon which it could be excused. With respect to the cause and prejudice standard, Petitioner has not shown that "some external impediment prevent[ed] [his] counsel from constructing or raising the claim" on appeal, nor does Petitioner contend that his counsel was constitutionally ineffective by failing to raise the claim. See *Murray*, 477 U.S. at 492. Plaintiff has not asserted actual innocence either, such as to invoke the miscarriage-of-

justice exception to procedural default. See *House*, 547 U.S. at 537. For all of the foregoing reasons, the Court respectfully denies Petitioner's first habeas claim.

## B. Trial Counsel's Failure to Pursue an Involuntary Manslaughter Conviction or Guilty Plea

The Court now turns to Petitioner's second habeas claim, in which Petitioner asserts that his right to a fair trial under the Due Process Clause was violated because his trial counsel was constitutionally ineffective. See [8], Pet. at 10. Petitioner claims that his trial counsel should have argued in closing that "the evidence fit for a verdict of the lesser included offense of involuntary manslaughter." *Id.* Petitioner relatedly argues that, despite his request, trial counsel did not pursue an involuntary manslaughter guilty plea during pre-trial plea discussions with the State. See *id.* at 10, 19. The Court first addresses the plea-bargaining claim and then turns to the closing argument strategy.

### 1. Pre-trial plea negotiation efforts

Although Petitioner is correct that he was entitled to effective counsel in the pre-trial plea-bargaining process, see [8], Pet. at 19 (citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012)), Petitioner failed to properly raise this claim in state court, and therefore the Court must reject it as procedurally defaulted. Specifically, Petitioner only raised ineffectiveness during plea-bargaining in his post-conviction PLA brief. See [26], Ex. N at 18 (discussing the prejudice that resulted from trial counsel's failure to offer the State a plea of involuntary manslaughter). Petitioner's second amended post-conviction petition—although detailing trial counsel's failure to raise involuntary manslaughter *at trial* during closing argument—does not argue that counsel's ineffectiveness extended to pre-trial plea negotiations. See [26], Ex. K at 25–35. Petitioner also failed to raise this claim on direct appeal. See [26], Ex. A at 1. This claim

therefore is procedurally defaulted because Petitioner never gave the Illinois courts "one full opportunity to resolve [this] constitutional issue[]," *Boerckel*, 526 U.S. at 845.

As before, Petitioner has not argued that his default should be excused with respect to this claim. He does not contend that "some external impediment prevent[ed] [his] counsel from constructing or raising the claim," or that his appellate counsel was constitutionally ineffective by failing to raise it. See *Murray*, 477 U.S. at 492. Plaintiff has not asserted actual innocence either, such as to invoke the miscarriage-of-justice exception. See *House*, 547 U.S. at 537. The Court therefore must respectfully deny this claim.

## 2.     Trial counsel's closing argument

The Court now considers Petitioner's contention that his trial counsel was ineffective by failing to ask the jury for the compromise verdict of involuntary manslaughter during closing argument. Petitioner brought this claim in his post-conviction petition in state court, including seeking leave to appeal the issue to the Illinois Supreme Court. An ineffective assistance of counsel claim is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and requires a showing of deficient performance by counsel and resulting prejudice. See 466 U.S. at 687. Deficient performance means "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," or in other words, that the "representation fell below an objective standard of reasonableness." *Id.* at 687–88. Prejudice occurs when counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside a judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Because Petitioner presented this claim in state court and lost on the merits,[4] the Court

only may grant relief if the Illinois Appellate Court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> applicable of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

*Pinholster*, 131 S. Ct. at 1398 (quoting 28 U.S.C. § 2254(d)). The Supreme Court further has

elaborated that courts must apply "doubly deferential judicial review" to *Strickland* claims under

§ 2254(d)(1), explaining:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold." And, because
> the *Strickland* standard is a general standard, a state court has even more latitude
> to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal citations omitted). For the reasons

that follow, the Court concludes that the Illinois Appellate Court was not unreasonable in

rejecting Petitioner's *Strickland* claim.

The Appellate Court began its discussion by citing the correct standard for an ineffective

assistance of counsel claim under *Strickland*. [26], Ex. C at 9. As noted, the Court also observed

that Petitioner had come forward with a new fact (which the Court took as true) in his post-

conviction petition—that Petitioner never instructed his counsel "to abandon all argument in

---

[4] It is not clear whether the Illinois Appellate Court also rejected this claim on procedural default grounds. The Appellate Court's opinion states that "to the extent that [Petitioner's] postconviction claims rely on facts that appear on the face of the original trial record, we decline to relax the procedural default rule, and we conclude that the issues are procedurally defaulted." [26], Ex. C at 27–28. The Appellate Court identified as a "new fact," however, Petitioner's affidavit stating that he never instructed his counsel to abandon the involuntary manslaughter theory at trial; the Court took that fact as true for purpose of its analysis. See *id.* at 11. Because that "new fact" appears relevant to Petitioner's *Strickland* claim, the Court proceeds by assuming that the Appellate Court did not hold that this claim was procedurally defaulted.

favor of the possible alternative verdict of guilty of the offense of involuntary manslaughter or to focus exclusively on a request for a verdict of not guilty of all offenses." See *id.* at 11 (quoting Petitioner's affidavit).

The Court then observed that advancing an "all-or-nothing defense" is recognized as a valid trial strategy, unless based on a misapprehension of the law, and that strategic decisions at trial are virtually unchallengeable unless unsound. See [26], Ex. C at 13 (citing, in part, *Strickland*, 466 U.S. at 690). The Court went on to find that, contrary to Petitioner's assertion, counsel's argument that the shooting was accidental was legally viable as a matter of law. That is, under the factual circumstances, it was possible for the jury to find that the shooting was accidental, as opposed to reckless. See *id.* at 15–17. Finally, the Court found that nothing in the closing argument prevented the jury from returning a guilty verdict only on involuntary manslaughter. *Id.* at 17. Presumably, this latter holding was relevant to *Strickland's* prejudice prong. These holdings were not unreasonable.

With respect to *Strickland's* performance prong, the Court agrees that trial counsel's decision to argue that the shooting was accidental was a strategic decision that is entitled to a strong presumption of reasonableness. See *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009) (explaining that a defense theory at trial is a "strategic choice[] [that is] 'virtually unchallengeable'") (quoting *Strickland*, 466 U.S. at 690). Additionally, in *McAfee*, the Seventh Circuit addressed and rejected a *Strickland* challenge to defense counsel's decision to ask for a complete acquittal on first-degree intentional homicide, as opposed to requesting a conviction only on the lesser-included offense of first-degree reckless homicide. See *id.* at 355. There, the Seventh Circuit explained that, although asking for a conviction on a lesser-included offense may have been the better strategy in hindsight, "go[ing] for broke by seeking an acquittal on the more

serious charge," was "well within the range of 'professionally competent assistance.'"  *Id.* at 356

(quoting *Strickland*, 466 U.S. at 690).  Similarly here, although it may have been more prudent to

ask for involuntary manslaughter by conceding that Petitioner acted recklessly, instead of

accidentally, when he shot Munoz, the Illinois Appellate Court was not unreasonable in

determining that this strategy was not ineffective under *Strickland*.

As asserted in his post-conviction appellate brief, Petitioner maintains here that trial

counsel was ineffective because counsel did not understand that—as a matter of Illinois law—a

complete acquittal was unavailable, given the circumstances under which Munoz was shot.  That

is, because Petitioner testified that was handling a loaded gun in a moving vehicle—particularly

after having consumed alcohol and smoked marijuana earlier in the day—he was legally

"reckless," thereby precluding any theory of an "accidental" shooting.  See [27], Pet.'s Reply at

6; see also [26], Ex. [K] at 28–30.  Although Illinois case law supports Petitioner's contention

that his conduct was reckless, thereby foreclosing an accident theory, see, *e.g.*, *People v.

Franklin*, 189 Ill. App. 3d 425, 430 (Ill. App. Ct. 1st Dist. 1989), the Appellate Court that

reviewed Petitioner's post-conviction petition examined this issue when it rejected Petitioner's

*Strickland* claim.  In particular, the Appellate Court held that given all of the circumstances,

*including* the fact that Petitioner felt "bubbly" and "buzzed" at the time of the shooting, the

shooting nonetheless could have been found to be "accidental" by the jury.  See [26], Ex. C at

16–17 ("Defendant's testimony did not describe a shooting that, as a matter of law, could not

have been accidental.").  This Court may not review the Illinois Appellate Court's determination

of that state law issue.  See *Bradshaw v. Richey*, 546 U.S. 74, 77 (2005) ("We have repeatedly

held that a state court's interpretation of state law, including one announced on direct appeal of

the challenged conviction, binds a federal court sitting in habeas corpus."); *Estelle v. McGuire*,

502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jardine v. Dittmann*, 658 F.3d 772, 777 (7th Cir. 2011) ("[F]ederal courts in § 2254 proceedings defer to state-court descriptions of state law even if they do not agree with those descriptions.").

As to the prejudice prong of *Strickland*, the Court also concludes that Petitioner has not demonstrated that the Appellate Court was unreasonable in finding that no prejudice resulted from the purportedly deficient closing argument.  In particular, the Appellate Court observed that asking for a complete acquittal in closing did not preclude the jury from finding Petitioner guilty only of involuntary manslaughter; and, the jury was instructed on the lesser-included offense of involuntary manslaughter, as well as on the definitions of recklessness and intent.  See [26], Ex. C at 17.

For all of these reasons, the Court concludes that Petitioner is not entitled to federal habeas relief on his second claim.

### C. Failure to request or provide the jury with a limiting instruction regarding the testimony by the three attorney witnesses

The Court next turns to Petitioner's third habeas claim.  Petitioner asserts that the trial court's failure to provide a limiting instruction to the jury—and his counsel's failure to request such an instruction—concerning the testimony from the attorney witnesses violated Petitioner's right to effective counsel and his rights under the Confrontation Clause.  Specifically, Petitioner argues that "[a]bsent [ ] a limiting instruction[,] the jury was to accept all that was allowed to be presented [by the attorney witnesses] substantively."  [8], Pet. at 21.  Petitioner did not raise this claim on direct appeal but included it in his second amended post-conviction petition.  The Illinois Appellate Court rejected the claim on procedural default grounds (as Petitioner had omitted the claim from his direct appeal), as well as on the merits.

When a state court determines that an issue has not been properly preserved, and declines to review it, the "state court decision rests upon a ground that is both independent of the federal question and adequate to support the judgment." *Smith v. Gaetz*, 565 F.3d 346, 351–52 (7th Cir. 2009) (quoting *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993) (internal quotation marks omitted). Federal courts then are foreclosed from considering the petitioner's claims, unless the petitioner demonstrates cause and prejudice. See *id.* As explained below, the Illinois Appellate Court's determination that Petitioner's claim was procedurally defaulted precludes this Court from granting federal habeas relief on the claim. Because the claim is defaulted, the Court need not address the reasonableness of the Appellate Court's merits determination on this claim.

Addressing procedural default, the Illinois Appellate Court explained that a post-conviction proceeding "is limited to constitutional matters that have not been, nor could have been, previously adjudicated." [26], Ex. C at 10 (internal quotation marks and citations omitted). See also *People v. Morgan*, 187 Ill. 2d 500, 529 (Ill. 1999) ("The doctrine of *res judicata* bars consideration of issues that were raised and decided on direct appeal. Issues that could have been presented on direct appeal, but were not, are waived."). The Appellate Court further explained that, to the extent that Petitioner's post-conviction claims relied on facts that appeared on the face of the original trial record (as opposed to "new" facts), the procedural default rule only would be relaxed if Petitioner made a substantial showing that his appellate counsel was ineffective. See [26], Ex. C at 10. The only "new" fact that the Court identified was Petitioner's sworn statement that he never instructed his trial counsel to abandon an involuntary manslaughter theory. *Id.* at 11. Given that this new fact is not related to Petitioner's limiting instruction claim, Petitioner would have been required to show that his failure to raise the claim on direct appeal resulted from his appellate counsel's ineffectiveness. The Illinois Appellate

Court explicitly ruled that Petitioner's appellate counsel was not ineffective by failing to raise the claim, thus rendering Petitioner's claim procedurally defaulted. See *id.* at 27–28 ("[B]ecause an appellate counsel is not ineffective for failing to raise nonmeritorious claims on an appeal, to the extent that [Petitioner's] postconviction claims rely on facts that appear on the face of the original trial record, we decline to relax the procedural default rule, and we conclude that the issues are procedurally defaulted.") (internal citation omitted). As such, before this Court may review the habeas claim, Petitioner must excuse his procedural default by demonstrating cause and prejudice. See *Smith*, 565 F.3d at 351. He has not done so, as explained below.

Petitioner contends that his failure to raise his third habeas claim on direct appeal was due to his appellate counsel's ineffectiveness. See [27], Pet.'s Reply at 11. Although Petitioner is correct that ineffective assistance of counsel provides cause to set aside a procedural default, the Court still is precluded from excusing the default in this case because Petitioner failed to properly raise appellate counsel's ineffectiveness in state court. See *Smith*, 565 F.3d at 352 ("The assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted.") (quoting *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003)). Although Petitioner claimed in his post-conviction appeal that his appellate counsel was ineffective by failing to raise the limiting instruction claim on direct appeal, Petitioner omitted appellate counsel's ineffectiveness from his PLA to the Illinois Supreme Court, see generally, [26], Ex. N (arguing that trial counsel was ineffective). The abandonment of this claim renders it procedurally defaulted. See *Smith*, 565 F.3d at 352.

For all of these reasons, the Court denies habeas relief on Petitioner's third claim.

### D. Petitioner's Motion for an Evidentiary Hearing

Petitioner also has requested an evidentiary hearing on claims two and three. Specifically, Petitioner argues that this Court should remand his habeas petition to the Illinois Circuit Court with instructions to hold a third stage post-conviction evidentiary hearing. See [21], Mot. at 1. Petitioner asserts that he never received an evidentiary hearing on these claims and that the State's factual determination of these issues was not fairly supported by the record. See *id.* at 1–2. Petitioner further contends that he was entitled to an evidentiary hearing in state court because he made a substantial showing of constitutional violations in claims two and three. *Id.* at 2. The State opposes the motion, citing cases for the proposition that Petitioner is not entitled to an evidentiary hearing in *this* Court on his habeas claims. See [25], Ans. at 19–20. As discussed, Petitioner has not requested a hearing in this Court; rather he contends that the Illinois Appellate Court erred by not allowing him to proceed to the third stage of Illinois' post-conviction process. Although the State has not directly addressed Petitioner's request, the Court concludes that Petitioner is not entitled to an evidentiary hearing in state court.

As the Illinois Appellate Court explained in its opinion affirming the dismissal of Petitioner's post-conviction petition, post-conviction proceedings in Illinois proceed in three stages. See [26], Ex. C at 8 (citing Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*).

> At the first stage, if the trial court determines that a petition "is frivolous or is patently without merit," it can summarily dismiss the petition in a written order. * * * If a petition survives to the second stage, counsel may be appointed to an indigent defendant, and the State will be allowed to file responsive pleadings. To advance beyond the second stage, the petition and any accompanying documentation must make a "substantial showing" of a constitutional violation. * * * If the court determines that no substantial showing has been made, then the court dismisses the petition. Otherwise, the petition proceeds to the third stage, during which the court conducts an evidentiary hearing.

*Id.* at 8–9 (internal citations omitted). In this case, Petitioner's post-conviction petition was dismissed at the second stage, and the Illinois Appellate Court affirmed on the merits and on procedural default grounds, as discussed. See *id.* at 27–28. Petitioner thus was not permitted to proceed to the third stage post-conviction evidentiary hearing that he now requests.

In asking this Court to remand for an evidentiary hearing in the circuit court, Petitioner simply is challenging the Illinois Appellate Court's determination that he was not entitled to proceed to the third stage of Illinois' post-conviction process on his claims. As discussed in detail above, however, the Illinois Appellate Court found that Petitioner's third habeas claim was procedurally defaulted, and the Court was not unreasonable in rejecting the second claim on the merits. Accordingly, Petitioner has not demonstrated that he was entitled to a third-stage evidentiary hearing in Illinois on these claims.

### IV.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller–El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). And in cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 485.

The Court concludes that a certificate of appealability is not warranted in this case. With respect to the claim regarding counsel's closing argument, Petitioner has not made a substantial showing of the denial of a constitutional right. With respect to the remaining claims, reasonable jurists would not differ on the Court's assessment of procedural default. The Court therefore declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## V. Conclusion

For the reasons stated above, the Court respectfully denies Petitioner Talavera's petition for a writ of habeas corpus [8] and motion for an evidentiary hearing [21]. The Court further declines to certify any issue for appeal and directs the Clerk to enter judgment in favor of Respondent.

Dated: May 15, 2015

_____
Robert M. Dow, Jr.
United States District Judge